Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee, *v.* Southeastern Pennsylvania Transportation Authority, Appellant. The Philadelphia Suburban Transportation Company, Intervening Appellee.

Argued March 5, 1975, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Michael L. Browne,* with him *William T. Coleman, Jr., Richard L. Bazelon,* and, of counsel, *Dilworth, Paxson, Kalish, Levy & Coleman,* for appellant.

*Michael P. Kerrigan,* Assistant Counsel, with him *Peter W. Brown,* Counsel, for appellee.

*Robert B. Surrick,* with him *David G. Blake,* and, of counsel, *Cramp, D'Iorio, McConchie & Surrick,* for intervening appellee.

OPINION BY JUDGE BLATT, August 15, 1975:

On July 30, 1969, the Southeastern Pennsylvania Transportation Authority (SEPTA) entered into an agreement with the Philadelphia Suburban Transportation Company (PSTC) whereby SEPTA contracted to purchase the assets of PSTC including the Buck Lane Bridge under which run the rail lines of PSTC. On December 22, 1969, before the transaction was closed on January 29, 1970, the Township of Haverford had filed a complaint with the Public Utility Commission (PUC) alleging that the bridge was hazardous and unsafe. After hearings, the PUC ordered the bridge to be reconstructed, and on May 21, 1973 it assessed SEPTA with thirty percent of the cost of that reconstruction. PSTC was not assessed costs. SEPTA had argued before the PUC that it could not be held liable for any reconstruction costs under the terms of its agreement of sale with PSTC. But the terms of that agreement were in dispute between those parties and the PUC refused to interpret the contract. Instead, the PUC assessed the thirty percent cost against SEPTA in the first instance without prejudice to the rights of SEPTA to settle its contractual dispute with PSTC in another proceeding in another forum. SEPTA later petitioned the PUC for re-argument of the cost allocation issue raised by the May 21, 1973 order, but that petition was denied by an order of the PUC dated September 24, 1974. From that order SEPTA now appeals to this Court.

As is provided in Section 411(a) of the Public Utility Law.[1] 66 P.S. §1181(a):

"[T]he cost of construction . . . shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the Commission may, after due notice and hearing, determine,

---

1.   Act of May 28, 1937, P.L. 1053, *as amended.*

*unless such proportions are mutually agreed upon and paid by the interested parties."* (Emphasis added.) It has been held, therefore, that where the parties have 1) allocated the cost of such reconstruction between themselves by contract, and 2) have paid for the reconstruction in accordance with the terms of the contract, the PUC does not have the power to abrogate that contract by ordering one party to reimburse the other party in proportionate amounts contrary to those as provided in the contract. *City of Philadelphia v. Pennsylvania Public Utility Commission,* 449 Pa. 402, 296 A.2d 804 (1972). Such action would be outside of the PUC's statutory authority. SEPTA argues here that the PUC has so ordered the parties to pay costs contrary to their own agreement. Its position, however, is significantly distinguishable from the position of the parties in *City of Philadelphia, supra,* and its arguments must, therefore, fall.

Without quoting the terms of the contract between SEPTA and PSTC, they would indeed appear to set forth the respective liabilities of the parties as to any assessed costs of reconstruction. As between the parties, however, no payments have been made pursuant to the agreement for there still exists a dispute as to the proper construction to be accorded the contract as it concerns this liability. By its order of May 21, 1973, the PUC did not abrogate the rights of SEPTA under the agreement but preserved the opportunity to have the respective rights of the parties determined privately in a separate forum. The PUC's authority to act in this manner is expressly sanctional in *Pennsylvania Railroad Company v. Public Utility Commission,* 136 Pa. Superior Ct. 1, 7 A.2d 86 (1939). There the court said that the PUC had no jurisdiction to abrogate contracts among the parties "but it does not follow that the utilities and municipalities are not and cannot be made responsible in the first instance for the performance of a public duty—here to safely maintain a

bridge over tracks of a railroad. The contracts are not abrogated but after the Public Utility Commission has fixed the liabilities of those concerned to the public, such persons are then referred to a court of law to have adjudicated their contract rights." 136 Pa. Superior Ct. at 5-6, 7 A.2d at 87; *Accord Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 154 Pa. Superior Ct. 272, 35 A.2d 584 (1944). The PUC, therefore, is clearly not obligated to resolve a contractual dispute and herein lies the difference between this case and *City of Philadelphia, supra.* In *City of Philadelphia,* the contractual rights and liabilities among the parties had been long since resolved by our Supreme Court in *Philadelphia Electric Company v. Philadelphia,* 301 Pa. 291, 152 A. 23 (1930) and the payments for reconstruction had already been made accordingly. The PUC, there, did not resolve the contractual dispute but instead abrogated the already settled rights of the parties. And thus, *Pennsylvania Railroad Company v. Public Utility Commission,* rather than *City of Philadelphia* controls in this case.

In accordance with *Pennsylvania Railroad Company v. Public Utility Commission, supra,* SEPTA may still have its rights in relation to PSTC adjudicated and the ultimate responsibility to pay the cost of reconstruction determined as between the parties to the agreement in a private action.

SEPTA also argues that the PUC acted arbitrarily and capriciously in allocating costs to SEPTA. In apportioning costs, the PUC is not limited to any fixed rule, but all factors should be taken into consideration. The only requirement is that the order be just and reasonable. *Pennsylvania Public Utility Commission v. Department of Transportation,* 2 Pa. Commonwealth Ct. 144, 276 A.2d 573 (1971); *see also Pittsburgh Railways Company v. Pennsylvania Public Utility Commission,* 198 Pa. Superior Ct. 415, 182 A.2d 80 (1962). The PUC in its order indicated that the cost allocation was based on "past

responsibility and future benefits." It is not clear as to what the PUC meant by the term "past responsibility" and there does not appear to be substantial evidence that SEPTA will receive "future benefits" from the bridge. The question of benefits, however, is not involved. "It is the presence and ownership of the track involved, not any benefit conferred, which places liability on the railroad." (Citation omitted.) *Lehigh & New England Railroad Company v. Public Service Commission,* 126 Pa. Superior Ct. 565, 571, 191 A. 380, 383 (1937). As to past responsibility, it could be placed here upon either SEPTA or PSTC depending upon the rights of each under the contract of sale executed between them. And, because either SEPTA or PSTC owned the track at the times herein relevant, it would appear that the ultimate liability rides upon the resolution of the contractual dispute and the transfer of ownership. Because we cannot settle the contractual dispute, SEPTA argues that the township's complaint was filed after the parties had entered into the agreement of sale but prior to the closing date and thus prior to its acquisition of ownership and, therefore, past responsibility based on ownership would lie with PSTC. Obviously, however, the parties' contractual dispute would include a dispute as to whether or not this type of past responsibility was transferred to SEPTA under the agreement. Inasmuch, however, as the PUC was not the proper body to resolve that dispute we do not believe that it was improper for the PUC to have assessed construction costs against the owner at the time of the order, rather than upon the owner at the time the complaint was filed. The fact that SEPTA acquired the ownership would suggest that they should be held liable in the first instance for they would normally assume the attendant obligations of ownership subject, of course, to any subsequent contractual determinations. We do not believe, therefore, that the PUC acted arbitrarily in allocating the cost of reconstruction to SEPTA.

SEPTA does not appear to challenge the vaidity of the actual percentage figure of the reconstruction cost allocated to it by the May 21, 1973 order, nor did it raise that issue in its petition for reargument. In any event, it does not appear unjust or unreasonable on the basis of the record before us.

We, therefore, issue the following

### ORDER

AND NOW, this 15th day of August, 1975, the order of the Pennsylvania Public Utility Commission dated September 24, 1974, is hereby affirmed and the appeal by the Southeastern Pennsylvania Transportation Authority is dismissed.