Equitable Gas Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Chartiers Valley District Flood Control Authority et al., Intervenors.

Argued December 17, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS and CRAIG, sitting as a panel of three.

*Lawrence B. Nydes*, with him *Jack F. Aschinger*, for petitioner.

*Gary D. Cohen*, Assistant Counsel, with him *Joseph J. Malatesta, Jr.*, Chief Counsel, for respondent.

*T. P. Shearer*, with him *George D. Wenick*, for intervenor Chartiers Valley District Flood Control Authority.

*Timothy F. Nicholson*, for intervenor, Pennsylvania Gas Association.

OPINION BY JUDGE ROGERS, March 18, 1982:

We are asked to review the Pennsylvania Public Utility Commission's determination that it has no power to allocate to a municipal authority the costs sustained by a public utility in relocating its facilities, on account of a flood control project, from a public highway right-of-way to a newly constructed bridge replacing that portion of the highway previously occupied.

The Chartiers Valley Flood Control Authority in concert with the Pennsylvania Department of Environmental Resources and the United States Army Corps of Engineers determined the necessity of constructing an artificial "cut-off" channel designed to direct the flow of flood stage waters of the Chartiers Creek as part of a $20 million dollar flood control project benefiting the citizens of Washington and Allegheny Counties. This channel was to be so located as to require the replacement with bridges of portions of Legislative Route 50 and Steen Road in Collier Township, Allegheny County. Two gas pipelines owned by the Equitable Gas Company and located within the highway

right-of-way at the locations of the proposed bridge structures were required by the flood control plan to be relocated onto the bridges at a cost of over $52,000.00.

In January, 1978, Equitable made application to the Commission for an order requiring the flood control authority to bear the relocation costs. The Commission treated this application as a Petition for Allocation of Costs and assigned the matter to an administrative law judge. The authority moved to dismiss the petition for lack of subject matter jurisdiction in the Commission and the administrative law judge recommended that the motion be granted. The Commission failed to adopt this recommendation and remanded the matter for further proceedings including an allocation of costs.

On remand the administrative law judge recommended the allocation of all relocation costs to the authority and, following the filing of exceptions by the Commission's trial staff, the Commission again failed to adopt this recommendation and remanded the matter for further proceedings including the receipt of evidence on the issue of the identity of those classes of individuals to be benefited by the flood control project. An evidentiary hearing was held in November, 1979, and, on the basis of evidence and argument there presented, the administrative law judge entered an initial decision holding that the Commission was, in the instant factual context, without power to allocate the utility relocation costs among the parties to the proceedings and ordering Equitable to bear the expense of relocating its facilities. The Commission adopted this decision and denied the prayer of Equitable's petition for reconsideration.[1] This appeal followed. We affirm.

---

[1] Equitable and the Pennsylvania Gas Association, amicus curiae, attempt to support their position that the Commission has

Equitable concedes, as it must, that public utilities in this Commonwealth have long been required to move at their expense facilities located within a public highway right-of-way when such expenses are made necessary by the relocation or improvement of the roadway lying over or adjacent to the facilities. The effect and rationale of this common law doctrine was summarized by Mr. Justice BENJAMIN R. JONES in *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 645-646, 145 A.2d 172, 175 (1958) as follows:

Historically, in Pennsylvania, non-transportation public utilities have been permitted to occupy highway rights-of-way free of cost, subject and subordinate to the State's police power to control and regulate the highways for the benefit of the public. Delaware River Joint Commission Case, 342 Pa. 119, 19 A.2d 278; Philadelphia Electric Company v. Commonwealth, 311 Pa. 542, 166 A. 892; Scranton Gas and Water Co. v. Scranton City, 214 Pa. 586, 64 A. 84; Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission, 168 Pa. Superior Ct. 360, 78 A.2d 46; Bell Telephone Company of Pennsylvania v. Pennsylvania Public Utility Commission, 139 Pa. Superior Ct. 529, 12 A.2d 479; Springfield Water Co. v. Phila. & Garrettford Ry., 45 Pa. Superior Ct. 516. Such utilities obtain no property rights in the highway and can be ordered by a competent state or municipal agency to relocate their facilities at their own expense (Delaware River Joint Commission

the power to allocate costs in this case by repeated reference to the apparent vacillation of the Commission and its legal staff on this issue during the course of these proceedings. However, it is not argued that the Commission's actions were procedurally improper and the only question now before us is whether the Commission's May 1, 1980, Order is sustainable.

Case, supra; Bell Telephone Co. of Pennsylvania v. Lewis, Sec'y., 317 Pa. 387, 177 A. 36; Duquesne Light Co. v. Pittsburgh, 251 Pa. 557, 97 A. 85). The reason obviously is that since these utilities occupy the highways free of cost they should not be entitled to compensation if they are forced to relocate their facilities because of highway improvements. This common law rule, however, can and may be abrogated by a *specific statutory mandate* directing the payment of relocation costs to the non-transportation utilities involved. See: Philadelphia Electric Co. v. Commonwealth, 311 Pa. 542, 166 A. 892; Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission, 168 Pa. Superior Ct. 360, 367, 78 A.2d 46. (Emphasis in the original) (footnote omitted).[2]

*See also City of Pittsburgh v. Pennsylvania Public Utility Commission,* 45 Pa. Commonwealth Ct. 80, 404 A.2d 786 (1979); *Department of Transportation v. Pennsylvania Power and Light,* 34 Pa. Commonwealth Ct. 594, 383 A.2d 1314 (1978).

However, Equitable argues that the common law rule is not applicable here because the relocation costs at issue were incurred as the result of a flood control project rather than a highway improvement project. *Duquesne Light Company v. Borough of Monroeville,* 449 Pa. 573, 298 A.2d 252 (1972) and *Postal Telegraph-Cable Company v. Pennsylvania Public Utility Commission,* 154 Pa. Superior Ct. 340, 35 A.2d 535 (1943) are cited for the proposition that the Commission may allocate to any proper party public utility facility re-

---

[2] The omitted footnote refers the reader interested in the allocation of costs in non-highway project cases *inter alia* to *Postal-Telegraph-Cable Company v. Pennsylvania Public Utility Commission,* 154 Pa. Superior Ct. 340, 35 A.2d 535 (1943); relied on by Equitable, and discussed in the latter portion of this opinion.

location costs resulting from projects other than those intended to effect highway improvements. We are in complete agreement with the administrative law judge, as affirmed by the Commission, that the authorities relied on do not support Equitable's contention. *Borough of Monroeville* did not involve the allocation of costs and while the case clearly establishes the exclusive jurisdiction of the Commission to determine, in the context of a municipality's redevelopment project, matters related to the design, location, installation, and maintenance of public utility facilities; the jurisdiction of the Commission over such matters in the instant case is not here questioned.[3]

In *Postal-Telegraph* it was held that the Commission may require a municipal authority to bear the costs of an electric utility incurred when as the result of construction at an airport the utility was required to vacate its facilities in a public right-of-way and to purchase a private easement in which to locate its poles and electric lines. Judge RHODES, after discussing with approval those cases enunciating the common law rule placing on the utility the burden of facility relocation where it is only required that the facilities

---

[3] By a post argument submission, the Commission tells us that a change in its membership has resulted in a change in the Commission's view concerning its jurisdiction over the subject of the relocation of utility facilities in public rights-of-way, concerning which, as we have noted in the body, the Commission in this case held that it had jurisdiction over the subject of relocation (but not over the allocation of the costs of relocation). The Commission's view is now that it has no jurisdiction over the subject and we are told that it has so held in another matter. The Commission would like us now to decide the matter of its jurisdiction over relocation. We decline to do so first, because this subject was not briefed and argued before the court and, second because it simply is not before us. The only party litigant which raised the question was the Chartiers Valley District Flood Control Authority which has not appealed the Commission's order.

be moved from one portion of the public right-of-way to another, reasoned that the case before him called for a different result:

It is manifest, we think, that the order in the present case effects a result to which those cases are inapplicable. In effect, appellant's right to maintain its facilities within the highway limits has been abrogated; it has been deprived of its easement. This is not merely to control appellant's use of its property right in the interest of the public, a valid exercise of the police power through the instrumentality of the commission (Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission, 136 Pa. Superior Ct. 1, 7 A.2d 86); but, in our judgment, it amounts to a taking of appellant's property, and, from our determination of the basis of the jurisdiction of the commission, a taking for public use. Under these circumstances the cost of the relocation of the line cannot be permitted to rest upon [the utility]. It should be borne by the portion of the public directly benefited—the municipality which owns the airport, the City of Connellsville.

*Id.* at 350, 35 A.2d at 540.

Thus *Postal-Telegraph* is limited in application to instances where the utility has been compelled to relinquish entirely its right to use the public right-of-way. Here, Equitable's use of the public right-of-way remains in the wake of the flood control project and Equitable has not been required to purchase an alternative private easement. *Postal-Telegraph* is simply inapposite.

Finally, Equitable contends in the alternative that the common law rule has here been supplanted by the specific statutory mandate referred to in *Delaware*

*Port Authority* and that the Commission has been empowered by the legislature to allocate relocation costs in Sections 501, 1301, and 1501 of the Pennsylvania Public Utility Code, 66 Pa. C. S. §§501, 1301, and 1501 having to do with the general powers of the Commission to determine the reasonableness of utility rates and rate structures; and the adequacy, efficiency, and safety of utility service. This argument has been rejected in the context of cases governed by the common law rule; that is, cases where a utility is merely required to move its facilities from one to another portion of a public highway right-of-way. *PennDOT v. Pennsylvania Power and Light,* 34 Pa. Commonwealth Ct. 594, 383 A.2d 1314 (1978). *See also* such cases as *Allegheny County Port Authority v. Pennsylvania Public Utility Commission,* 427 Pa. 562, 237 A.2d 602 (1967) and *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 45 Pa. Commonwealth Ct. 80, 404 A.2d 786 (1979) in which it is held that the only provision of the Utility Code which supplants the common law rule requiring utilities to bear the expense of facility relocation within a public right-of-way is Section 2704(a), 66 Pa. C. S. §2704(a) having to do with railroad crossings and concededly not relevant here. The Commission properly found that this was a case within the general common law rule and placed the financial burden on Equitable.

Order affirmed.

## ORDER

AND Now, this 18th day of March, 1982, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

Judge PALLADINO did not participate in the decision in this case.