Allegheny County Port Authority et al.,
Appellants, *v.* Pennsylvania Public
Utility Commission.

300

Argued November 10, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Edward L. Springer,* with him *Louis M. Tarasi, Jr.,* and *Burgwin, Ruffin, Perry & Pohl,* for port authority, appellant.

*Marion K. Finkelhor,* Second Assistant City Solicitor, with him *Thomas S. White,* Assistant City Solicitor, and *David Stahl,* City Solicitor, for Pittsburgh, appellant.

*William D. Sutton,* with him *David S. Watson,* and *Thorp, Reed & Armstrong,* for railways company, appellant.

*Anthony L. Marino,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Donald A. Brinkworth,* for railroad company, intervening appellee.

*Gilbert E. Morcroft,* for Borough of Crafton, intervening appellee.

OPINION BY ERVIN, P. J., March 24, 1966:

The appeals in this case are from the final order of the Commission, dated April 20, 1965, apportioning

and assessing the costs of the construction of a new bridge (Black's Bridge) to replace an old bridge originally constructed in 1895, under §§409 and 411 of the Public Utility Law, 66 PS §§1179, 1181, and arise out of application A.86350 filed by the Pittsburgh Railways Co. (Railways), seeking approval of the alteration of the crossing where Railways' two streetcar tracks on Black's Bridge cross, above grade, two main tracks of the Penna. Railroad. The bridge is located fifty-nine per cent in the City of Pittsburgh and forty-one per cent in the Borough of Crafton. The present application (A.86350) is one of sixteen similar applications docketed at A.86340 to 86355, inclusive, for alteration or abolition of as many steam rail-highway crossings above or below grade. These applications were filed concurrently with the application of Railways docketed at A.86339 seeking approval of abandonment of street railway service and facilities on various routes between the City of Pittsburgh and certain suburban municipalities to the west, all in Allegheny County, Railways also concurrently filed applications, docketed at A.76720, Folders 73 to 78, inclusive, for permission to substitute bus service. By order dated January 16, 1961 at A.86339, the Commission approved, subject to certain conditions, the abandonment of street railway service and the substitution of bus service. The order of January 16, 1961 at A.86339 also provided that the abolition "and/or alteration of steam railroad crossings above, or below, grade be performed as directed by subsequent orders to issue at A.86340 to A.86355."

On October 9, 1961 the Commission disposed of Railways' application at A.86353 concerning the Catherine Street crossing in the Borough of Ingram, which order allocating costs was appealed to this Court and affirmed in *Pittsburgh Railways Co. v. Pa. P.U.C.*, 198 Pa. Superior Ct. 415, 182 A. 2d 80 (1962). By order

dated March 20, 1961 at A.86350 the Commission directed further hearing to determine whether Black's Bridge should be repaired or reconstructed. Black's Bridge is a single span iron truss superstructure, approximately 140 feet in length, supported by stone masonry abutments, and was constructed in 1895 by Railways' predecessor, under contract with Penna. Railroad's predecessor. Under the contract the railroad company paid the street railway company $2,500 and the latter agreed to maintain the bridge and furnish the necessary repairs and renewals thereof in the future. Railways used the bridge from its construction in 1895 until the abandonment of Railways' trolley route pursuant to the Commission order of January 16, 1961. Following a hearing, the Commission, on October 2, 1961, found that the only proper solution of the problem was the construction of a new bridge at this location. Accordingly, the Commission ordered the Borough of Crafton to prepare preliminary plans for construction, and ordered further hearings for adoption of the plan and the allocation of costs.

Thereafter Railways filed a motion to dismiss and be relieved of any further liability in respect to this bridge, since it had abandoned its railway service thereon. On August 12, 1963 the Commission refused Railways' motion to dismiss.

On December 18, 1963 the Port Authority of Allegheny County (Authority) filed and recorded with the Commission its approved transportation plan, under the Second Class County Port Authority Act of April 6, 1956, P. L. (1955) 1414, as amended, 55 PS §551 et seq., thereby obligating the Authority to acquire and operate the transportation system of Railways, under a target date of March 1, 1964. Thereafter the Authority proceeded to acquire Railways' "transportation system." See *Pittsburgh Railways Co. v. Port of Allegheny County Authority*, 415 Pa. 177, 183, 202 A. 2d 816.

On February 10, 1964 the Commission entered an order making the Authority a party respondent in the proceedings at A.86350 involving the Black's Bridge replacement. The order recited that the Authority, as transferee of Railways' facilities "would acquire such facilities subject to the jurisdiction and power of this Commission over rail-highway crossings. . . ." The Authority filed a motion to dismiss on the ground the Commission lacked jurisdiction over the Authority in this rail-highway proceeding. A hearing on the Authority's petition to vacate the Commission's order making the Authority a party, was held May 8, 1964, at which the Authority's counsel attempted to show the Black's Bridge was not, and could not be legally acquired by the Authority. After rehearing, the filing of briefs and argument, the Commission, on August 17, 1964 entered an order, reaffirming its holding that the Commission had jurisdiction and power to join the Authority as a party in the rail-highway cost assessment proceeding. The Authority took an appeal to this Court at No. 54 March Term, 1965. On March 12, 1965, no assessment having been made against Authority, we quashed the appeal as interlocutory.

On April 20, 1965 the Commission entered the final order which is the basis of the present appeals, directing the Borough to proceed with the construction of Black's Bridge, and allocating the costs of construction as follows: City of Pittsburgh, 10%; County of Allegheny, 40%; Penna. **Railroad, 10%**; Borough of Crafton, 10%; Pittsburgh Railways and the Authority, jointly and severally, 30%. Appeals from the assessment have been taken by the Authority and Railways, and the City of Pittsburgh. No appeals were taken by the County of Allegheny, Penna. Railroad or Borough of Crafton; the latter two have been granted leave to intervene as appellees. The Commission further directed that future maintenance costs be paid by the

Borough, and that the City of Pittsburgh reimburse the Borough to the extent of 50% of maintenance; and that Railways and the Authority be relieved of future maintenance.

Railways' application for a rehearing of the Commission order of April 20, 1965 urged that its assessment be limited to the cost of demolition ($6,000) or 3% of the total cost of $192,857, and that the remainder of 30% or 27% be allocated to the Authority or other interested parties. The Authority also applied for a rehearing, alleging that Black's Bridge was not included in the integrated plan filed with the Commission, that the bridge was abandoned by Railways, was not useful in the transportation of passengers and could not be legally acquired by the Authority.

In its appeal Railways contends its liability is limited to the cost of demolition of Black's Bridge since the bridge route has been abandoned; that any imposition of greater costs amounts to a taking of its property without due process of law, and that the Commission erred in enlarging its abandonment application into a proceeding for replacement of the bridge. All of the points raised by Railways in these proceedings are answered, in substance, by our rulings on similar contentions by Railways in the Catherine Street crossing appeal: *Pittsburgh Railways Co. v. Pa. P.U.C.*, supra, and what we said there need not be repeated at length here. Thus, we pointed out, at pages 423 and 425, that the Commission could properly deal with replacement and repair of a crossing, though the proceeding was initiated by a petition seeking abandonment. As we stated at page 426, quoting *Lehigh & New England R.R. Co. v. P.S.C.*, 126 Pa. Superior Ct. 565, 191 A. 380: "Those conditions which may have brought about the necessity for a new underpass do not operate to relieve appellant. It is a question of providing for public safety by reasonable methods. . . . In order to

prevent accidents and promote the safety of the public, the commission acted within its power, if the facts warranted, in ordering its reconstruction and in apportioning the cost thereof." Railways initiated the proceedings, was under a duty to maintain the bridge, and remained a necessary party throughout the entire proceedings. Railways could not ordinarily limit its responsibility to costs incident to razing the old bridge.

We shall next consider the appeal of the Authority. Its contention here is that the Commission has no power, under §§409-412 of the Public Utility Law, to assess any portion of the expenses incident to the alteration, construction, etc. of a rail-highway crossing in this proceeding against it. The Authority says it is not by its nature amenable to such construction costs; further, that it acquired no facility of Railways connected with Black's Bridge.

The Authority is a municipal corporation, as defined in the Public Utility Law, §2 (15), 66 PS §1102, as including "all cities, boroughs, towns, townships, or counties of this Commonwealth, and also any public corporation, *authority* or body whatsoever created or organized under any law of this Commonwealth for the purpose of rendering any service similar to that of a public utility." (Emphasis supplied) Admittedly, the Commission's power to allocate costs in rail-highway crossing situations must be found in §§409-412 of the Public Utility Law: *Delaware River Port Authority v. Pa. P.U.C.,* 393 Pa. 639, 643, 145 A. 2d 172. There the Court held the Commission did not have the power to assess a particular type of costs, viz., the cost of relocation of lines of non-transportation utilities, against an Authority. This was because such relocation costs were payable by the non-transportation utility at common law, and no power on the part of the Commonwealth to assess such costs in rail-highway crossing proceedings could be found in the statute. However,

§§409-412 of the Code give the Commission general jurisdiction over the allocation of costs resulting from the construction, alteration, etc., of rail-highway crossings, and no other body retains jurisdiction over this subject matter: *Delaware River Port Authority v. Pa. P.U.C.*, 408 Pa. 169, 178, 182 A. 2d 682. Sec. 409(a) provides: "No public utility, engaged in the transportation of passengers or property, shall, without prior order of the commission, construct its facilities across the facilities of any other such public utility or across any highway . . . and, without like order, no such crossing . . . shall be altered, relocated or abolished." Under §409(b) the Commission is given exclusive power to "determine . . . the manner in which, such crossing may be constructed, altered, relocated or abolished . . . to effectuate the prevention of accidents and the promotion of the safety of the public." Under §409(c) the Commission may order the work of construction, etc., to be performed "by any public utility or municipal corporation *concerned* or by the Commonwealth." (Emphasis supplied) Under §411, 66 PS §1181, the "expense of such construction, relocation, alteration . . . of any crossing, shall be . . . paid . . . by the public utilities or municipal corporations *concerned,* or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine. . . ." (Emphasis supplied)

We find nothing in the Second Class County Port Authority Act of April 6, 1956, P. L. 1414, as amended, 55 PS §551 et seq., which would interfere with the Commission's power to allocate rail-highway costs against an Authority. It is clear that §§409 and 411 of the Public Utility Law, supra, give the Commission the *power* to allocate costs in rail-highway crossing proceedings against the Authority, as a "municipal corporation" operating a utility, in a proper case.

Did the record and evidence in this case support the Commission's allocation against the Authority, jointly and severally with Railways, of 30% of such costs of reconstruction of Black's Bridge? The Commission takes the view that Railways or its transferee (the Authority) has franchises at this crossing; that the Authority condemned all contracts of Railways. In any event, says the Commission, it is immaterial whether the Authority acquired Railways' facilities at this bridge since the Authority's liability is based upon the acquisition by the Authority, of the great bulk of Railways' assets.

The abandonment of railway service on the bridge was expressly conditioned upon the issuance of subsequent orders regarding the alteration of the crossing. Railways initiated the proceedings for abandonment, and was subject to assessment on subsequent orders as to alteration of the crossing. The Commission may compel public utilities, municipalities concerned, or the Commonwealth, "jointly or in several allotments" to pay the expense for eliminating grade crossings: *Westmoreland Chemical & Color Co. v. P.S.C.*, 294 Pa. 451, 144 A. 407; *Phila. Suburban Water Co. v. Pa. P.U.C.*, 168 Pa. Superior Ct. 360, 369, 78 A. 2d 46 (1951). The law does not require that the total expense be prorated among the respective parties upon a percentage basis; the only requirement is that the order be just and reasonable: *Erie R.R. v. P.S.C.*, 271 Pa. 409, 114 A. 357, and of course the party must be *concerned*.

The allocation of 10% of construction costs and 50% of maintenance against the City of Pittsburgh, is supported by evidence. As stated, the bridge was 59% in the City of Pittsburgh and 41% within the Borough of Crafton. The duty of allocating costs is primarily a matter within the administrative discretion of the Commission and its order will not be reversed if reasonable and in conformity with law: *Tarentum Bor-*

*ough v. Pa. P.U.C.*, 171 Pa. Superior Ct. 156, 90 A. 2d 853. An appellate court cannot sit as an administrative body to determine and weigh detailed factual matters; if the Commission's ratio of assessment is fair, we will not disturb it: *Pittsburgh Railways Co. v. Pa. P.U.C.*, supra.

The order of the Commission making a joint and several assessment of 30% of the costs of construction against Railways and the Authority must be reversed. Although the plan of acquisition was on file with the Commission, whether or not the Authority acquired rights and succeeded to liabilities as to Black's Bridge crossing, does not appear clearly of record in these proceedings. Counsel for the appellant Authority attempted to show throughout the proceedings, especially at the May 8, 1964 hearing, that it did not, and could not, legally acquire Black's Bridge crossing or franchises thereunder, since this route had been abandoned prior to the Authority's acquisition proceedings. The Commission uniformly excluded this evidence as irrelevant.

Undoubtedly the Commission has jurisdiction and power, in a proper case, to assess the Authority for costs in rail-highway crossing proceedings, under §§409 and 411 of the Act. However, the Commission's order must be supported by evidence: *Aizen v. Pa. P.U.C.*, 163 Pa. Superior Ct. 305, 60 A. 2d 443. It is difficult to see how the acquisition of the "transportation system" and bulk of assets of Railways by the Authority, could impose liability on the Authority for any part of the crossing alteration and construction cost, in this proceeding involving only Black's Bridge. Liability must be determined upon some sound legal or factual basis, and cannot be predicated upon general commission policy: *West Penn Rys. Co. v. Pa. P.U.C.*, 135 Pa. Superior Ct. 89, 99, 4 A. 2d 545. The case of *Yezioro v. N. Fayette Co. Municipal Authority*, 193 Pa. Superior Ct. 271, 164 A. 2d 129, does not support liability

here. There the Authority clearly succeeded to the duty to service a particular water line.

The consistent refusal of the Commission at the May 8, 1964 hearings to allow the Authority to present evidence as to whether the Authority acquired any rights or obligations as to this crossing, was error. Evidence is certainly available as to what rights and liabilities passed to the Authority from Railways in the acquisition and condemnation proceedings. The Commission is the *only* body to determine, upon proper evidence, the basis and extent of the liability for assessment of construction, etc., costs in rail-highway crossings: *Delaware River Port Authority v. Pa. P.U.C.,* supra. Here the evidence is not clear and does not support the Commission's allocation of costs directly against the Authority with respect to Black's Bridge crossing. The Commission, by its joint and several assessment against the Railways and the Authority, has endeavored to follow the bulk of the assets acquired by the Authority from the Railways. Both the Supreme Court and our Court have held that a lien holder's vested interest in property thereafter condemned for a public purpose is transferred by the act of condemnation from the property itself and applied to the damages or award: *Goodman v. City of Bethlehem,* 323 Pa. 58, 185 A. 719; *Ferguson v. Pittsburgh & S. R.R. Co.,* 253 Pa. 581, 98 A. 732; *Woods Run Avenue,* 43 Pa. Superior Ct. 475.

A similar result is provided for under the Port Authority Act here involved. Section 7.1 of the Act of 1959, P. L. 1266, 55 PS §557.1, provides as follows: "When the authority exercises its right of eminent domain, it shall, prior to taking possession of the property, pay into the court of common pleas of the county in which said authority is created in the manner to be provided by the rules of court, a sum equal to seventy-five per centum (75%) of the amount estimated by it

312

as the damages which will result from such exercise. Upon such payment into court, the authority shall have the right to immediate possession of the property and the authority shall be relieved of all obligation to see to the application or distribution of said money paid into court. The court shall direct the payment of said sum of money to the person or persons entitled thereto upon petition and proof of such entitlement and upon such conditions, including the filing of a refunding bond, as the court shall, by general or special rule, provide."

Since the assessment was made jointly against the Authority and Railways, the record must be remanded for new assessments to be made in the light of such evidence as may be produced. The allocations against the parties who have not appealed, and against the City of Pittsburgh, are within the Commission's discretion, and presumably will not be changed, although, on remand, the Commission has power to change any or all assessments.

Reversed and remanded for further proceedings in accordance with this opinion.