Allegheny County Port Authority, Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued April 11, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Edward L. Springer*, with him *Louis M. Tarasi, Jr.*, and *Burgwin, Ruffin, Perry, Pohl & Springer*, for Port Authority, appellant.

*Anthony L. Marino,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Thomas S. White,* Assistant City Solicitor, and *David Stahl,* City Solicitor, for City of Pittsburgh, intervening appellee.

*Donald A. Brinkworth,* for Pennsylvania Railroad Company, intervening appellee.

*Gilbert E. Morcroft,* for Borough of Crafton, intervening appellee.

*William D. Sutton,* with him *Harry H. Frank,* and *Thorp, Reed & Armstrong,* and *McNees, Wallace & Nurick,* for Pittsburgh Railways Company, intervening appellee.

OPINION BY ERVIN, P. J., June 16, 1967:

This is an appeal by the Port Authority of Allegheny County from the order of the Pennsylvania Public Utility Commission, dated October 24, 1966, granting the application of Pittsburgh Railways Company (Railways) to be relieved of the obligation to maintain the present Black's Bridge, carrying Crafton Blvd. across two tracks of the Pennsylvania Railroad, and directing the Authority to maintain the bridge until further order of the commission.

The present appeal follows our decision in *Allegheny Co. Port Authority v. Pa. P. U. C.,* 207 Pa. Superior Ct. 299, 217 A. 2d 810 (March 24, 1966), wherein the commission at A.86350 apportioned the cost of a new bridge at the Black's Bridge crossing, directing that Railways and the Authority pay 30%, jointly, of such costs. Reversing the commission and remanding for further proceedings, we there stated, at pages 310

4

and 311: ". . . whether or not the Authority acquired rights and succeeded to liabilities as to Black's Bridge crossing, does not appear clearly of record in these proceedings. . . . Undoubtedly the Commission has jurisdiction and power, in a proper case, to assess the Authority for costs in rail-highway crossing proceedings, under §§409 and 411 of the Act. . . . The consistent refusal of the Commission at the May 8, 1964 hearings to allow the Authority to present evidence as to whether the Authority acquired any rights or obligations as to this crossing, was error." On April 26, 1966 Railways filed its petition at A.86350 with the commission requesting that future maintenance of the present Black's Bridge be transferred to the Authority. After answer filed, the commission assigned a new docket number (A.93067) to Railways' petition, and ordered consolidated hearings on A.93067 and A.86350, which were held June 27, 1966.

The order of the commission is supported by evidence; liability of the Authority is sustainable on a legal basis, and the order will be affirmed. The testimony and evidence of record before the commission shows the following: Mr. Buzzard, Superintendent of Transportation for Railways prior to March 1, 1964, and Operating Manager for the Authority thereafter, stated Railways operated two certificated streetcar routes (Route, 27, Carnegie, and Route 28, Heidelberg) over Black's Bridge prior to January 16, 1961, when the commission permitted *conditional* abandonment of these street railway routes and the substitution of buses thereon. The order of January 16, 1961 provided that "the abolition 'and/or alteration of steam railroad crossings above, or below, grade be performed as directed by subsequent orders to issue at A.86340 to A.86355.'" (207 Pa. Superior Ct. 299, 303) Mr. Buzzard and Mr. Palmer, Vice Chairman of Railways, both testified that from June 21, 1959 to Octo-

ber 29, 1963 Railways operated buses on Routes 27 and 28 over Black's Bridge. On the latter date Railways' buses were re-routed to avoid Black's Bridge because of a weight restriction imposed by the commission. Certificated Routes (27 and 28) were never amended, prior or subsequent to March 1, 1964, to eliminate the use of the present Black's Bridge. Mr. Buzzard testified specifically that certificated Routes 27 and 28 (including the temporary detour around Black's Bridge due to weight restrictions) were in effect and in use by Railways at the time of the condemnation by the Authority on March 1, 1964. Mr. Buzzard further testified that the Authority continued to operate bus routes 27 and 28 over the same route as Railways, including the detour around Black's Bridge, for more than one year after March 1, 1964. He also stated the Authority was not presently using Black's Bridge for its buses to Carnegie and Heidelberg because of the load restrictions imposed by the commission. In the event the restrictions were lifted the Authority would determine whether or not it would again use the bridge.

Clearly the Authority acquired the rights of Railways at Black's Bridge crossing when it condemned Railways and continued to operate Routes 27 and 28 to Carnegie and Heidelberg. Railways' Routes 27 and 28 were not abandoned. The January 16, 1961 order of the commission (207 Pa. Superior Ct. 299, 303) conditionally permitted abandonment of street railway service and the substitution of bus service on these routes, subject to further orders of the commission as to alteration of the crossings: *Pittsburgh Rwys. Co. v. Pa. P. U. C.*, 198 Pa. Superior Ct. 415, 182 A. 2d 80 (1962); *Allegheny Co. Port Authority v. Pa. P. U. C.*, 207 Pa. Superior Ct. 299, 303, 306, 217 A. 2d 810.

Appellant emphasizes a stipulation between Railways and the Authority that neither the bridge nor the

street railway facilities thereon were among the physical assets listed in the inventory of items in the condemnation proceedings. This stipulation is not decisive. The controlling factor is the clear evidence on the record that the Authority took over Routes 27 and 28, subject to further orders of the commission as to the Black's Bridge crossing. The Authority therefore succeeded to the rights and obligations of Railways at Black's Bridge crossing and was a party concerned within the meaning of §411 of the Public Utility Law, May 28, 1937, P. L. 1053, 66 PS §1181. As a party "concerned" the Authority was subject to assessment for costs of maintenance. Section 409 (b) of the Public Utility Law, 66 PS §1179, gives the commission exclusive power to determine the manner in which such highway rail crossings shall be maintained: *Conshohocken Boro. v. Pa. P. U. C.,* 135 Pa. Superior Ct. 295, 300, 301, 5 A. 2d 590 (1939) ; *Scott Twp. v. Pa. P. U. C.,* 188 Pa. Superior Ct. 174, 178, 179, 146 A. 2d 617. Under §411 of the Act, 66 PS §1181, the resulting expenses of "construction, relocation, alteration, *protection,* or abolition of any crossing" are to be "paid . . . by the public utilities or municipal corporations *concerned,* or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine. . . ." (Emphasis supplied) *Conshohocken Boro. v. Pa. P. U. C.,* supra, 135 Pa. Superior Ct. 295, 5 A. 2d 590 (1939) ; *Allegheny Co. Port Authority v. Pa. P. U. C.,* supra, 207 Pa. Superior Ct. 299, 308, 217 A. 2d 810. The evidence of record supports the order of the commission placing liability for maintenance of the present Black's Bridge on the Authority.

Order affirmed.