**PECO ENERGY COMPANY,**
Petitioner,

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 13, 2000.

Decided July 19, 2000.

Thomas P. Brogan, Harrisburg, for petitioner.

David E. Screven, Harrisburg, for respondent.

Jason D. Sharp, Harrisburg, for intervenor, Dept. of Transportation.

Before SMITH, J., KELLEY, J., and McCLOSKEY, Senior Judge.

KELLEY, Judge.

PECO Energy Company (PECO) petitions for review of an order of the Pennsylvania Public Utility Commission (Commission) which granted the exceptions filed by the Pennsylvania Department of Transportation (DOT) to the recommended decision of an Administrative Law Judge (ALJ). We vacate and remand.

On September 3, 1997, DOT filed an application with the Commission to reconstruct State Route 2001, designated as Christopher Columbus Boulevard/Delaware Avenue (Delaware Avenue), by removal of old railroad tracks, base repairs, drainage improvements and resurfacing. The application sought abolition and removal of twenty-three (23) railroad crossings owned by Consolidated Rail Corporation (Conrail). The Commission, by letter dated November 20, 1997, approved DOT's application and directed DOT to prepare and submit to the Commission for approval, final construction drawings for the reconstruction and resurfacing of Delaware Avenue. Thereafter, hearings were held before an ALJ after which the ALJ made the following findings of fact adopted by the Commission.

As a result of its application to reconstruct and resurface Delaware Avenue, DOT entered into stipulations with various municipal public utilities to share the costs of the project and relocating the municipal public utilities facilities. DOT did not enter into any stipulations or agreements with PECO or Bell Atlantic–Pennsylvania, Inc. (Bell) to share the costs of relocating PECO's and Bell's facilities along Delaware Avenue. Consequently, PECO and Bell sought reimbursement from DOT for all costs actually incurred in connection with the removal and replacement of PECO's and Bell's facilities. DOT refused to agree to reimburse PECO and Bell for the aforementioned costs. DOT will receive federal and state funding for the Delaware Avenue project.

Based on: (1) the benefit received by the ratepayers of the particular utility; (2) the availability of state and/or federal funding for a project; (3) the placing of the costs upon the party responsible for the situation; and (4) the equities of a particular situation, the ALJ ordered DOT to pay to PECO and Bell 100% of the actual costs incurred by PECO and Bell in furnishing material and performing work minus the costs of any betterment to their facilities. DOT filed exceptions with the Commission raising objections to the foregoing portion of the ALJ's recommended decision and order.

The Commission granted DOT's exceptions by order entered April 5, 1999. The Commission concluded that the ALJ's recommended cost allocation with respect to PECO and Bell was not just and reasonable based on the following considerations. First, the Commission determined that both Bell and PECO have received, and will continue to receive, substantial benefits from the location of their facilities in a public right-of-way, rather than being faced with the necessity of acquiring a

private right-of-way for their respective facilities.

Second, the Commission determined that DOT may utilize federal funding to defray the cost of utility relocation only when DOT is obligated to do so under state law. The Commission believed that DOT should not be penalized: (1) for cost sharing with municipal non-carrier public utilities, as it is permitted to do by state law; and (2) for complying with the law and not volunteering to reimburse Bell and PECO with state funds or seeking federal funding to reimburse Bell and PECO. In short, the Commission determined that DOT only has legal authority to cost share with municipal, non-carrier public utilities.

Third, the Commission found that the fact that DOT was the moving force or "cost causer" behind the project was not of overriding weight in the determination of the allocation of reimbursement costs. The Commission believed that DOT should not be penalized for conducting a highway safety improvement project, especially in light of the Commission's paramount goal of preventing accidents and promoting public safety. Additionally, the Commission stated that it could not expect DOT to wait until the various utilities' facilities are at the extreme end of their useful lives before DOT can conduct major roadway reconstruction and that safety and design improvements must be completed when necessary.

Fourth, the Commission determined that consistency was an important factor in allocating 100% of the costs to Bell and PECO. The Commission pointed out that in a prior proceeding wherein DOT sought approval to rehabilitate the Smithfield Street Bridge in the City of Pittsburgh, the utilities involved therein, Bell and Duquesne Light Company, were each directed to bear 100% of the costs and expenses incurred in the relocation of their facilities. The Commission pointed out that in that decision, the ALJ determined that the

ratepayers of Bell and Duquesne Light Company, as a class, did not benefit from the subject project and that "but for" the project the utilities would not have incurred the costs at issue did not support reimbursement when set against the taxpayers of Allegheny County, as a class, bearing the costs incurred by Bell and Duquesne Light Company to relocate their respective facilities. The Commission concluded that the same logic applied in the present matter and stated that "[t]he taxpayers of the Commonwealth should not be forced to bear Bell and PECO's relocation costs when both Bell and PECO have received and continue to receive substantial benefits from the location of their facilities in public right-of-ways." Commission's Opinion and Order at 10.

Thus, the Commission ordered, *inter alia*, that PECO and Bell, at their sole cost and expense, furnish all material and do all work necessary to alter and/or relocate and/or remove their facilities from the areas of the crossings in such a manner as will not interfere with the abolition and construction project. On April 20, 1999, PECO requested reconsideration of the Commission's April 5, 1999 order. By order adopted April 29, 1999, the Commission expressly granted reconsideration of its April 5, 1999. By order adopted June 24, 1999, the Commission determined that the issues raised by PECO in support of its request that the Commission reconsider its April 5, 1999 order were not new and novel arguments that would persuade the Commission to reverse or amend its April 5, 1999 order. This appeal by PECO followed.[1]

PECO raises the following issues in this appeal:

1. Whether the Commission committed an error of law in effectively abrogating its exclusive jurisdiction under Sections 2702 and 2704 of the Public Utility Code, 66 Pa.C.S. § 2702; 2704, by accepting DOT's policy against reimbursing a public utility for costs incurred to replace or

---

1. Bell did not appeal the Commission's order.

relocate facilities located in public rights-of-way.

2. Whether the Commission's determination concerning the availability of funds was erroneous and not supported by the evidence.

3. Whether there was sufficient evidence of record to support the Commission's order.

4. Whether the Commission's order is erroneous, arbitrary and capricious because it fails to follow, distinguish or overrule prior Commission adjudications.

■ As a preliminary matter, the Commission alleges in its brief that PECO has only petitioned for review of the Commission's June 24, 1999 order in its petition filed with this Court. Consequently, the Commission contends, PECO did not timely appeal the Commission's April 5, 1999 order and this Court should only consider the Commission's June 24, 1999 order denying reconsideration. The Commission contends that an appeal from a Commission order denying reconsideration cannot be used to collaterally attack the merits of an earlier order from which no timely appeal was taken. This argument is totally without merit.[2]

As stated previously herein, the Commission adopted a timely order of reconsideration of its April 5, 1999 order on April 29, 1999. As such, the time for filing a petition for review began to run anew after the entry of the decision on reconsideration on June 24, 1999. *See* Pa.R.A.P. 1701(b)(3). Pursuant to Pa.R.A.P. 1701(b)(3), the time begins to run anew whether or not the decision on reconsideration amounts to a reaffirmation of the prior determination of the government unit. *Id.* Accordingly, although PECO

could have been more clear in its petition for review and included the April 5, 1999 order, based on the Commission's specific grant of reconsideration on April 29, 1999 and Pa.R.A.P. 1701(b), this Court's review of the April 5, 1999 order is properly before this Court.

We now turn to the issues raised by PECO in this appeal.[3] First, PECO argues that the Commission erroneously relied on the old common law rule as the only factor for its decision. PECO contends that the Commission's determination that the taxpayers of this Commonwealth should not be forced to bear PECO's relocation costs when PECO has received and continues to receive substantial benefits from the location of its facilities in public rights-of-way, simply resurrects the old common law rule that utilities who occupy public rights-of-way are not entitled to compensation if forced to relocate their facilities because of rail-highway improvement projects. PECO point out that this rule was abolished by the 1937 amendments to the Public Utility Code. PECO argues that these amendments explicitly gave the Commission the authority to allocate relocation costs of utility facilities in rail-highway crossing proceedings. PECO argues that the Commission used the abrogated common law rule to override the four factors usually considered by the Commission in allocating costs. Thus, PECO contends that the Commission's decision was based, not on the law or facts, but on a policy determination that "[t]he taxpayers of the Commonwealth should not be forced to bear Bell and PECO's relocation costs when both Bell and PECO have received and continue to receive substantial benefits from the location of their facilities in public right-of-ways." PECO

---

**2.** We note that the Commission fails to cite any case law in support of its position nor does it cite to or even attempt to offer an argument as to why Pa.R.A.P. 1701 would be inapplicable to this case.

**3.** This Court's scope of review of a Commission decision is limited to determining wheth-

er the Commission violated constitutional rights, committed an error of law, rendered a decision that is not supported by substantial evidence, or has violated its rules of practice. *Consolidated Rail Corporation v. Pennsylvania Public Utility Commission*, 155 Pa.Cmwlth. 537, 625 A.2d 741 (1993).

contends that when the four factors are considered, it is clear that DOT should be required to reimburse Bell and PECO for their relocation costs.

In response, the Commission argues that its decision was a proper exercise of its authority and supported by substantial evidence. The Commission points out that it is well settled that the Commission is not limited to any fixed rate with respect to the allocation of costs but instead may take all relevant factors into consideration. There is no mandatory or exclusive list of considerations that the Commission is required to utilize when assigning costs in rail-highway proceedings. Thus, the Commission argues that it remains to take into consideration additional factors the Commission deems relevant when assessing costs. The Commission contends that, in this case, the Commission, in its discretion, concluded that the reasons underlying the common law rule were also relevant and were not adequately considered by the ALJ. The Commission states that it found that PECO received substantial benefits from locating its facilities in the public right of way and that PECO did not present credible evidence that the facilities it had to remove for the Delaware Avenue project had significant remaining useful lives.

The authority of the Commission must arise either from the express words of the pertinent statutes or by strong and necessary implication therefrom. *City of Philadelphia v. Philadelphia Electric Company*, 504 Pa. 312, 473 A.2d 997 (1984). It is well settled that the Commission's power is statutory and the legislative grant of power to act in any particular case must be clear. *Id.* In *City of Philadelphia*, the Supreme Court set forth the

historical review of the Commission's authority with respect to the allocation of costs.

Under the earlier case law of the Commonwealth, non-transportation utilities were permitted to occupy highway rights-of-way free of costs, subject and subordinate to the state's police power to control and regulate the highways for the benefit of the public. These utilities obtained no property rights in the highway and could be ordered by a state or municipal agency to relocate their facilities at their own expense. The reasoning justifying this conclusion was the utilities who occupy the highway free of cost should not be entitled to compensation if they are forced to relocate their facilities because of highway improvements.

With the enactment of the Public Service Company Law [Act of July 26, 1913, P.L. 1373 (repealed 1937)] in 1913, the Commission was given exclusive jurisdiction over the construction of rail-highway crossings. Section 12[4] of that statute specifically included the common rule relating to the apportionment of cost for relocation incurred by non-transportation public utilities.

The express prohibition against the reimbursement of utilities for relocation costs was not included when the Public Utility Law of 1937 [Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §§ 1101–2207 (repealed 1978)] was enacted to supersede the Public Service Company Law. Nevertheless, this Court still rejected the argument that the common law rule was abrogated by implication as a result of that deletion. To the contrary, we held that the 1937 enactment did not establish "a clear, legisla-

4. Section 12 provided in pertinent part:
[W]here the order of the Commission shall, as part of the regulation of the construction, relocation, alteration, or abolition of any crossing aforesaid, require, as incidental thereto, a relocation, changes in or the removal of any adjacent structures, equipment or other facilities of any tele-

graph, telephone, gas, electric light, water power, water pipeline, or other public service company, said company shall, at its own expense, relocate, change or remove, such structures, equipment or other facilities in conformity with the order of the commission;....

tive intent to change the well-settled policy of the law that non-transportation public utilities must bear the expenses of relocating their facilities when the relocation is brought about by governmental exercise of the police power such as in construction, relocation, ... of a highway-rail crossing." *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 393 Pa. 639, 647, 145 A.2d 172, 176 (1958). In that opinion the Commission's right to allocate relocation costs under section 411(a) was limited to relocation costs incurred by the railroad, railway or the owners of the highway. Restated, we there concluded that the Commission's power did not extend to the expenses of a nontransportation utility.

Following our decision in *Delaware River Port Authority, supra*, the legislature in 1963 amended section 411(a) to read as follows:

Section 411. Compensation for Damages Occasioned by Construction, Relocation, Protection, Alteration, or Abolition of Crossings.—(a) The compensation for damages which the owners of adjacent property taken injured or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this act, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the [expense] of such construction, relocation, alteration, protection, or abolition of [any] such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties....

[The words added or deleted by the amendment shown in italics or brackets, respectively.]

The 1963 amendment was obviously in response to our decision in *Delaware River Port Authority, supra*, and the added language provided the clear grant of authority to the Commission to allocate relocation costs incurred by "any kind of public utility service" in rail-highway crossings. It is clear that after the 1963 amendment to section 411(a), the Commission's statutory power to allocate relocation cost to the appropriate parties in rail-highway crossing cases is limited only by the existence of executed agreements between the parties as to the allocation of such costs.

. . . .

As part of an ongoing codification program, the Public Utility Law of 1937 was repealed by the General Assembly in 1978 [Act of July 1, 1978, P.L. 598] and the Pennsylvania Consolidated Statutes were simultaneously amended to include Title 66, Public Utilities [66 Pa. C.S. §§ 101–3316.]. As a result, a statutory provision virtually identical to section 411(a) now appears at 66 Pa.C.S. § 2704(a).[5] The 1978 codification did

---

**5.** Section 2704(a) provides:

Compensation for damages occasioned by construction, relocation, or abolition of crossings

(a) General rule. – The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this part, shall, after due notice and hearing, be ascertained and determined by the commis-

sion. Such compensation, as well as the cost of construction, relocation, alteration protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne or paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proportions as the commission may, after due notice and hearing, determine, unless such

not effect a change in the Commission's power to allocate costs.

*City of Philadelphia,* 504 Pa. at 318–322, 473 A.2d at 1000–1002 (citations and omitted).

Based on the foregoing historical view, the Supreme Court in *City of Philadelphia,* rejected the argument that the common law rule relating to cost allocations of relocation expenses of non-transportation utilities enjoys a continuing vitality. *Id.* at 324, 473 A.2d at 1003. The Supreme Court stated that:

> [s]ince the deletion of section 12 of the Public Service Company Law there is no basis for suggesting that the Commission's discretion is fettered by the former rule that the utilities must pay their own relocation costs.

> Although one may argue the wisdom of the common law rule, it must be remembered that in enacting the Public Utility Code and in creating the Commission, the legislature sought to establish a statewide standardization of all facets of the operation of public utilities under the governance of the Commission. It would be cavalier to assume that a judicially created rule of thumb would be preferable to a case-by-case judgment by the agency vested with the superintendence of the area.

*Id.* (citations omitted).

As noted herein, Section 2704 of the Public Utility Code governs compensation for damages occasioned by construction, relocation or abolition of crossings. 66 Pa.C.S. § 2704. Pursuant to Section 2704(a), the cost of construction, relocation, alteration, protection, or abolition of crossing and of facilities at or adjacent to such crossings which are used in any kind of public utility service, shall be borne and paid, by the public utilities, municipal corporations, municipal authority or non-profit organization concerned or by the Commonwealth in such proper proportions as the Commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties. 66 Pa.C.S. § 2704(a).

■ As the Commission points out in its opinion and order, the Commission generally considers four factors in determining the appropriate allocation of costs associated with the relocation of facilities for non-carrier utilities in connection with the alteration of rail-highway crossings. Commission Opinion and Order at 7. Those factors are: (1) the benefit received by the ratepayers of the particular utility; (2) the availability of state and/or federal funding for a project; (3) the placing of the costs upon the party responsible for the situation; and (4) the equities of a particular situation. *Id.* However, as correctly stated by the Commission, there is no fixed four-part test. *Bell Atlantic–Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 672 A.2d 352 (Pa.Cmwlth.1995). The Commission is not confined to any one formula or fixed rate, but must consider all relevant factors when allocating costs of constructing, removing or altering rail-highway crossings. *AT & T v. Pennsylvania Public Utility Commission,* 558 Pa. 290, 737 A.2d 201 (1999).

■ A fundamental requirement is that the Commission's order be just and reasonable. *Consolidated Rail Corporation v. Pennsylvania Public Utility Commission,* 671 A.2d 248 (Pa.Cmwlth.1995). The Commission's allocations of costs, of repair or maintenance of highway-railroad crossing, between the parties is within the discretion of the Commission. *City of Philadelphia v. Pennsylvania Public Utility Commission,* 676 A.2d 1298 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 546 Pa. 657, 684 A.2d 558 (1996), *cert. denied,* 520 U.S. 1155, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997). As such, an order of the Commission allocating costs in rail-highway crossing proceedings will not be reversed if the Commission's order is rea-

proportions are mutually agreed upon and     paid by the interested parties.

sonable and in conformity with the law. *Port Authority of Allegheny County v. Pennsylvania Public Utility Commission,* 207 Pa.Super. 299, 217 A.2d 810 (1966).

■ With the foregoing historical review and principles in mind, we believe that the Commission's order directing PECO, at its sole cost and expense, to furnish all material and do all work necessary to alter and/or relocate and/or remove its facilities from the areas of the crossings is not in conformity with the law. It is clear from the Commission's adjudication that the Commission has resurrected the old common law rule abrogated by the General Assembly. The main justification for the order is the Commission's determination that the taxpayers should not be forced to bear PECO's relocation costs when PECO has received and will continue to receive substantial benefits for the location of its facilities in a public right-of-way rather than being faced with the necessity of acquiring a private right-of-way for its facilities. In fact, the Commission states in its brief that it concluded that the reasons underlying the common law rule were relevant and were not adequately considered by the ALJ. However, as held by the Supreme Court, the common law rule that utilities must pay their own relocation costs is no longer a viable rule because the General Assembly has chosen to abrogate the rule. *City of Philadelphia.*

While this Court recognizes that the Commission has the jurisdiction under the Public Utility Code to allocate costs and that such allocation is in the discretion of the Commission, such discretion is not unfettered. *Greene Township Board of Su-*

*pervisors v. Pennsylvania Public Utility Commission,* 668 A.2d 615 (Pa.Cmwlth. 1995). Thus, we hold that by considering the reasons underlying a common law rule that has been expressly abrogated by the General Assembly, the Commission has abused its discretion.

Accordingly, we reverse the Commission's order and remand this matter for a new determination, in accordance with this opinion, of the allocation of costs incurred as a result of DOT's abolition and construction project.[6]

### ORDER

AND NOW, this 19th day of July, 2000, the order of the Pennsylvania Public Utility Commission in the above captioned matter is vacated and this matter is remanded for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

---

6. As a result of our disposition of the first issue raised by PECO in this appeal, we need not address the remaining issues raised. We do note, however, with respect to PECO's argument that the Commission failed to properly consider the availability of federal funds, that, as stated in this opinion, the Commission is not bound by an fixed formula. *AT & T.* The Commission's decision must be just and reasonable and based upon some sound legal or factual basis. *Greene Township.* Moreover, with respect to PECO's argument

that the Commission's order is erroneous because the order fails to follow, distinguish or overrule substantial prior Commission adjudications, we point out that while the Commission, as an administrative agency, is not bound by the rule of stare decisis, PECO is correct in its assertion that the Commission, as an administrative agency, must render consistent opinions and should either follow, distinguish or overrule its own precedent. *Bell Atlantic.*