**HARRISBURG TAXICAB & BAGGAGE COMPANY t/a Yellow Cab, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2001.

Decided Oct. 25, 2001.

Craig A. Doll, Harrisburg, for petitioner.

Deanne M. O'Dell, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, McGINLEY, SMITH, PELLEGRINI, KELLEY, and LEADBETTER, Judges.

SMITH, Judge.

Harrisburg Taxicab & Baggage Company t/a Yellow Cab (Petitioner) petitions for review of an order of the Pennsylvania Public Utility Commission (PUC) that denied Petitioner's exceptions and adopted the initial decision of an administrative law judge (ALJ) which sustained the complaint against Petitioner for various violations of PUC regulations. Petitioner questions whether the PUC possesses statutory authority to enforce the Vehicle Code, 75 Pa.C.S. §§ 101–9805, directly or indirectly, whether the jurisdiction of the PUC encompasses enforcement of Pennsylvania Department of Transportation (DOT) vehicle inspection authority, whether a PUC Enforcement Officer is a police officer and whether the PUC may expand its jurisdiction through the adoption of regulations.

I

Petitioner is a taxicab company operating pursuant to several certificates of pub-

lic convenience issued by the PUC and is subject to regulation by the PUC pursuant to Sections 1101 and 1102 of the Public Utility Code, 66 Pa.C.S. §§ 1101, 1102. PUC Enforcement Officers David D. Beck and John W. Bumsted conducted twelve different inspections of Petitioner's facilities on June 8, 9 and 10, 1999. The officers found that several taxicabs were being operated without having the meter and meter driving equipment sealed as required by 52 Pa.Code § 29.314(b)(4) and (5), without having the rates of fare posted as required by 52 Pa.Code § 29.316(c) and without having the meter regulated in accordance with the current tariff rates on file with the PUC as required by 52 Pa. Code § 29.314(b)(6). Officer Beck found several taxicabs that were being operated with the vehicle not in a clean and sanitary condition as required by 52 Pa.Code § 29.403(2). Officer Bumsted found a taxicab being operated with the left front sway bar broken from the vehicle's suspension, a taxicab with the right side idler arm loose and a taxicab with the left front sway bar broken from the vehicle's mounting.

██ Based upon these inspections, the PUC's Bureau of Transportation and Safety filed a complaint against Petitioner on July 20, 1999 alleging numerous violations of PUC regulations found at 52 Pa.Code §§ 29.314(b)(4)-(6), 29.316(c), 29.402(1) and 29.403(2) as well as a violation of Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501. A hearing was held on January 25, 2000 before the ALJ, who issued an initial decision recommending that the for-

mal complaint be sustained and imposing a civil fine against Petitioner. The ALJ opined that the PUC, by referencing DOT regulations in 52 Pa.Code § 29.402(1), was merely exercising the authority granted by Section 1504(1) of the Public Utility Code, 66 Pa.C.S. § 1504(1), to prescribe just and reasonable standards relating to a public utility's facilities and that such references did not transform the enforcement of the PUC's regulations into enforcement of DOT regulations. Petitioner filed three exceptions, which included an argument that the ALJ committed an error of law by finding that the Public Utility Code permits enforcement, either directly or indirectly, of the Vehicle Code and of DOT regulations. The PUC denied the exceptions and adopted the ALJ's initial decision, concluding that the PUC has the authority to regulate common carriers and that the Bureau's complaint did not involve enforcement of the Vehicle Code, but rather violations of the Public Utility Code.[1]

Before this Court, Petitioner challenges only that portion of the PUC's decision which concluded that Petitioner had failed to ensure the safety of its facilities in violation of Section 1501 of the Public Utility Code, and 52 Pa.Code § 29.402(1). The violations of these provisions were based upon Officer Bumsted's discovery of the broken sway bars and the broken idle bar. Petitioner argues that the PUC lacks authority to exercise regulatory authority over the safe operation of taxicabs because the legislature specifically delegated that authority to DOT. Petitioner characterizes

---

1. The PUC is the ultimate factfinder in formal complaint proceedings; it weighs the evidence and resolves conflicts in the testimony. Section 335(a) of the Public Utility Code, 66 Pa.C.S. § 335(a); *Bethlehem Steel Corp. v. Pennsylvania Public Utility Commission,* 552 Pa. 134, 713 A.2d 1110 (1998). When reviewing the initial decision of an ALJ, the PUC has all of the powers that it would have had in

making the initial decision except as to any limits that it may impose by notice or by rule. 66 Pa.C.S. § 335(a). This Court's review of the PUC's order is limited to determining whether constitutional rights have been violated, an error of law has been committed or the PUC's findings and conclusions are not supported by substantial evidence. *Bethlehem Steel Corp.*

the PUC's exercise of regulatory authority in this area as an improper attempt to enforce the Vehicle Code.

## II

■ As this Court explained in *Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission*, 10 Pa.Cmwlth. 533, 538, 311 A.2d 370, 373 (1973):

> A regulatory agency, such as the PUC, is a creature of the legislative body which created it. It has only those powers, duties, responsibilities, and jurisdiction given to it by the Legislature. There are many instances when a regulatory agency may do things not specifically provided for in the enabling statute, but this type of act always must come within the legislative intent.

Accordingly, the authority of the PUC "must arise either from the express words of the pertinent statutes or by strong and necessary implication therefrom." *PECO Energy Co. v. Pennsylvania Public Utility Commission*, 756 A.2d 156, 160 (Pa.

Cmwlth.2000), *appeal granted,* —— Pa. ——, —— A.2d ——, 2001 WL 91339 (No. 584 & 585 M.D. Alloc. Dkt.2000, filed January 31, 2001). Section 501 of the Public Utility Code, 66 Pa.C.S. § 501, expressly grants the PUC full power and authority to enforce the Public Utility Code, grants the PUC general administrative authority to supervise public utilities doing business in the Commonwealth and authorizes the PUC to promulgate regulations in the exercise of its powers and performance of its duties.[2]

■ Taxicab services, such as that operated by Petitioner, are public utilities as common carriers by motor vehicle.[3] Section 1501 of the Public Utility Code requires public utilities to "furnish and maintain adequate, efficient, safe, and reasonable service and facilities" and to make "all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public." Accordingly, the PUC clearly has the au-

**2.** Section 501(a) provides in part:

In addition to any powers expressly enumerated in this part, the commission shall have full power and authority, and it shall be its duty to enforce, execute and carry out, by its regulations, orders, or otherwise, all and singular, the provisions of this part, and the full intent thereof; and shall have the power to rescind or modify any such regulations or orders.

Section 501(b), grants the PUC "general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth" and authorizes the PUC to make "such regulations, not inconsistent with law, as may be necessary or proper in the exercise of its powers or for the performance of its duties."

**3.** The definition of "public utility" in Section 102 of the Public Utility Code, 66 Pa.C.S. § 102, includes, among other things, "[a]ny person or corporations now or hereafter own-

ing or operating in this Commonwealth equipment or facilities for ... [t]ransporting passengers or property as a common carrier." Subject to certain exceptions not applicable here, Section 102 defines "common carrier by motor vehicle" as:

Any common carrier who or which holds out or undertakes the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by motor vehicle for compensation, whether or not the owner or operator of such motor vehicle, or who or which provides or furnishes any motor vehicle, with or without driver, for transportation or for use in transportation of persons or property as aforesaid, and shall include common carriers by rail, water, or air, and express or forwarding public utilities insofar as such common carriers or such public utilities are engaged in such motor vehicle operations....

thority and the duty to regulate the facilities of taxicab services and to ensure that Petitioner makes all repairs necessary for the safety of its patrons, employees and the public.

The definition of "facilities" includes "[a]ll the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation. . . ." Section 102 of the Public Utility Code, as amended, 66 Pa.C.S. § 102. Thus the taxicabs owned by a taxicab service are part of its facilities, and the PUC has the authority and duty to inspect them for safety of patrons, employees and the public. Indeed, this Court has stated: "Courts of this Commonwealth have long recognized the importance of the [PUC's] responsibility to regulate common carriers so as to protect the safety of the public." *Limelight Limousine, Inc. v. Pennsylvania Public Utility Commission,* 135 Pa. Cmwlth. 316, 328, 580 A.2d 472, 477 (1990). In fact the Public Utility Code and court decisions impose a duty on the PUC to protect the safety of passengers of common carriers by motor vehicle. *Id.*

■ Petitioner nevertheless argues that the PUC may not inspect taxicabs for safety because the General Assembly has specifically delegated that authority to DOT. Petitioner relies upon this Court's decisions in *Country Place Waste Treatment Co., Inc. v. Pennsylvania Public Utility Commission,* 654 A.2d 72 (Pa.Cmwlth. 1995), and *United Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission,* 676 A.2d 1244 (Pa.Cmwlth. 1996), for the proposition that the PUC cannot regulate an area that is specifically delegated to another agency. In *Country*

*Place* the PUC asserted jurisdiction over a complaint against a public utility which alleged that offensive odors emanated from the utility's sewage treatment plant. This Court held that the PUC lacked jurisdiction over the matters raised in the complaint because the offensive odors were neither part of the services provided by the utility nor part of the facilities of the utility. In contrast, the taxicabs at issue in the present case are part of Petitioner's facilities, and therefore *Country Place* is inapposite.

In *United Telephone* the PUC entered an order directing a telephone company to allow PUC staff to monitor the company's customer service and collection representatives during telephone conversations with the company's customers. The Court reversed the order of the PUC, explaining that the PUC was prohibited from interceptions of wire, electronic or oral communications by the Pennsylvania Wiretapping and Electronic Surveillance Control Act (Wiretap Act), 18 Pa.C.S. §§ 5701–5781, and that none of the delineated exceptions to the general prohibition in the Wiretap Act apply to the PUC. Petitioner's argument based on *United Telephone* fails because the Vehicle Code does not contain a general prohibition equivalent to that of the Wiretap Act, and therefore *United Telephone* is inapposite. The Public Utility Code clearly assigns the PUC the authority and the duty to regulate taxicab services for safety. Although this creates an overlap with the authority of DOT under the Vehicle Code, such overlap does not divest the PUC of its statutory authority or duty.[4]

---

4. Because these inspections were conducted under the authority of the Public Utility Code and not the Vehicle Code, Petitioner's argument concerning whether PUC Enforcement Officers are police for purposes of the Vehicle Code is irrelevant and need not be addressed

by the Court. Petitioner concedes that PUC Enforcement Officers are qualified for their positions and that they have authority to enforce the Public Utility Code. The Court notes, however, that Section 307 of the Public Utility Code, 66 Pa.C.S. § 307, authorizes the PUC

■ Petitioner next argues that, by incorporating DOT regulations at 52 Pa. Code § 29.402(1), the PUC is improperly attempting to enlarge its jurisdiction to include enforcing the Vehicle Code. The relevant part of Section 29.402(1) sets forth the following requirement for vehicles having a seating capacity of 15 passengers or less operated by common carriers or contract carriers:

Vehicles shall comply with applicable Department of Transportation equipment inspection standards as set forth in 67 Pa.Code Chapter 175 (relating to vehicle equipment and inspection) at all times when the vehicle is being operated.

The DOT regulations set forth in 67 Pa. Code Chapter 175 provide the standards to be used by Official State Inspection Stations during annual vehicle inspections. The Chapter implements Sections 4101 to 4982 of the Vehicle Code, 75 Pa.C.S. § 4101–4982. The purpose of that part of the Vehicle Code is, among other things, "to establish minimum standards for vehicle equipment the performance of which is related to *vehicle safety*, noise control and air quality...." 75 Pa.C.S. § 4101 (emphasis added).

The PUC's decision to incorporate DOT regulations in an area where the two agencies possess overlapping authority is in no way inappropriate. Rather such harmonization is salutary. The United States Court of Appeals' discussion in *Baltimore & Ohio R.R. Company v. Occupational Safety and Health Review Commission,* 548 F.2d 1052, 1055 (D.C.Cir.1976), concerning federal agencies with overlapping authority applies with equal force here:

It is unquestionably true that, as petitioners understandably lament, the Congressional scheme fixed upon in this instance is visibly pregnant with dangers of duplication and overlapping assertions of authority by competing federal agencies. An industry caught in the middle by this approach has, at the least, every right to expect that, until the final boundaries are defined, there will be sensible cooperation and mutual adjustment between the various agencies involved.

The Court agrees that the decision of the PUC to incorporate DOT's regulations in its own regulations represents exactly the type of sensible cooperation and mutual adjustment between the agencies advocated by the United States Court of Appeals. *See also Duquesne Light Co. v. Borough of Monroeville,* 449 Pa. 573, 298 A.2d 252 (1972) (explaining that where the PUC and a local government had overlapping statutory authority the General Assembly intended the statutes to be applied harmoniously); *City of Philadelphia v. Pennsylvania Public Utility Commission,* 702 A.2d 1139 (Pa.Cmwlth.1997) (requiring the PUC to give due deference to the conditions imposed by a local government in an area of overlapping authority). The order of the PUC is affirmed.

---

to "employ such inspectors, as it may deem necessary, for the purpose of enforcing the provisions of this part." Additionally, Section 307 declares PUC Enforcement Officers "to be police officers" and also gives them police power and authority throughout the Commonwealth "to arrest on view, without writ, rule, order, or process, any person operating as a motor carrier or common carrier by airplane without a certificate or permit required by this part." Moreover, to the extent that PUC Enforcement Officers lack expertise in motor vehicle mechanics, the Court notes that any taxicab service cited by a PUC Enforcement Officer may refute the officer's findings with expert testimony at the hearing before the ALJ.

### ORDER

AND NOW, this 25th day of October, 2001, the order of the Pennsylvania Public Utility Commission is affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent.

The compliance reports issued by the PUC Enforcement Officers in this case state, *inter alia*, that Petitioner's taxicabs were in violation of the PUC regulation found at 52 Pa.Code § 29.402(1).[1] The compliance reports that indicated violations of Section 29.402(1) of the PUC's regulations also referenced the DOT regulation found at 67 Pa.Code § 175.62.[2]

In affirming the PUC's order denying Petitioner's exceptions to these violations, the majority states "[t]he PUC's decision to incorporate DOT's regulations in an area where the two agencies possess overlapping authority is in no way inappropriate." Majority Slip Op. at 8. To the contrary, I have not found any provision in the Public Utility Code which empowers the PUC to adopt and enforce the regulations of DOT by mere reference to them in its own regulations.

Indeed, as this Court has previously noted:

> [T]he rulemaking power of administrative agencies is limited by statutory grant of authority and can only be conferred by clear and unmistakable language setting the exact bounds of the statutory grant. *Volunteer Firemen's Relief Association v. Minehart*, 425 Pa. 82, 227 A.2d 632 (1967); *Pennsylvania Medical Society v. State Board of Medicine*, [118 Pa.Cmwlth. 635, 546 A.2d 720 (1988)]. An agency's authority to promulgate a regulation may rest upon a grant of power implicit in the enabling legislation; such implication, however, must be manifest. *Pennsylvania Association of Life Underwriters v. Department of Insurance*, 482 Pa. 330, 393 A.2d 1131 (1978) . . .

*Campo v. State Real Estate Commission*, 723 A.2d 260, 262 (Pa.Cmwlth.1998).[3]

---

1. Section 29.402(1) of the PUC's regulations states:

    A common carrier or contract carrier may not permit a vehicle having a seating capacity of 15 passengers or less to be operated unless it complies with the following requirements:

    (1) Vehicles shall comply with applicable Department of Transportation equipment inspection standards as set forth in 67 Pa. Code Chapter 175 (relating to vehicle equipment and inspection) at all times when the vehicle is being operated. . .

    52 Pa.Code § 29.402(1).

2. Section 175.62 states that "[e]very suspension component shall be in safe operating condition as described in § 175.80 (relating to inspection procedure)." It should be noted that, like Section 175.62, all of the equipment standards contained in Sections 175.61 to 175.78 of DOT's regulations refer, in turn, to the equipment standards enunciated in Section 175.80 of DOT's regulations. Section 175.80 of DOT's regulations is entitled "Inspection procedure", and it exhaustively outlines the procedures to be used, and the equipment standards to be applied, in conducting the required inspection of all vehicles used in the Commonwealth under the broad grant of authority expressed in Chapter 47 of the Vehicle Code, 75 Pa.C.S. §§ 4701–4982.

3. *See also Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 510 Pa. 1, 18, 507 A.2d 1, 10 (1986) wherein the Pennsylvania Supreme Court stated:

    [A]dministrative agencies may exercise only the powers and authority conferred on them either expressly, or by necessary implication, by the Legislature. *Commonwealth v. Butler County Mushroom Farm*, 499 Pa. 509, 513, 454 A.2d 1, 4 (1982); *Commonwealth v. J. & A. Moeschlin, Inc.*, 314 Pa. 34, 170 A. 119 (1934); *Day v. Public Service Commission*, 312 Pa. 381, 167 A. 565 (1933). " 'The power and authority to be exercised by administrative commissions must be conferred by legisla-

It is true that, pursuant to Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501 [4], a public utility is under a continuing obligation to make all necessary repairs to its facilities [5] for the safety of its patrons, employees and the public. In addition, pursuant to section 1504(1) of the Public Utility Code, 66 Pa.C.S. § 1504(1) [6], the PUC is empowered to prescribe "just and reasonable standards" relating to the service and facilities of a public utility. Finally, pursuant to Section 501(b) of the Public Utility Code, 66 Pa.C.S. § 501(b) [7], authorized representatives of the PUC may inspect or examine the facilities of a public utility.

However, as indicated above, I have found no provision in the Public Utility Code by which the General Assembly has specifically empowered the PUC to adopt and enforce the regulations of a different administrative agency. In the absence of such a manifest grant of authority, I would conclude that the PUC is not empowered to adopt and enforce the regulations of DOT. Accordingly, I would reverse that portion of the PUC's order denying Petitioner's exceptions to the purported violations of Section 29.402(1) of the PUC's regulations.

---

tive language clear and unmistakable. A doubtful power does not exist. Such tribunals are extra judicial. They should act within the strict and exact limits defined.'" *Pennsylvania Human Relations Commission v. St. Joe Minerals Corporation*, 476 Pa. 302, 310, 382 A.2d 731, 735–36 (1978) (*quoting Green v. Milk Control Commission*, 340 Pa. 1, 3, 16 A.2d 9, 9 (1940)). Substantive rulemaking by administrative agencies is proper provided that the statutory delegation of power can reasonably be construed as authorizing it. *Hospital Association of Pennsylvania v. MacLeod*, 487 Pa. 516, 521, 410 A.2d 731, 733 (1980). These principles are well established.

4. Section 1501 states, in pertinent part:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs ... and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public... Such service and facilities shall be in conformity with the regulations and orders of the commission...

66 Pa.C.S. § 1501.

5. In pertinent part, Section 102 of the Public Utility Code defines "facilities" as:

All the plant and equipment of a public utility, including all tangible ... personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, ... licensed, used, controlled, furnished, or supplied for, by, or in connection with the business of any public utility...

66 Pa.C.S. § 102.

6. Section 1504(1) states:

The commission may, after reasonable notice and hearing, upon its own motion or upon complaint:

(1) Prescribe as to service and facilities ... just and reasonable standards, classifications, regulations and practices to be furnished, imposed, observed and followed by any or all public utilities.

66 Pa.C.S. § 1504(1).

7. Section 501(b) states:

(b) **Administrative authority and regulations.**—The commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth. The commission may make such regulations, not inconsistent with law, as may be necessary or proper in the exercise of its powers or for the performance of its duties.

66 Pa.C.S. § 501(b).